

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-14-00719-CV &
04-14-00723-CV

**THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF D.P.**,
a Mentally Ill Person

From the Probate Court No. 1, Bexar County, Texas
Trial Court Nos. 2014-MH-3187 & 2014-MH-3096
Honorable Oscar J. Kazen, Judge Presiding[1]

Opinion by:  Marialyn Barnard, Justice

Sitting:  Karen Angelini, Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  June 10, 2015

AFFIRMED

In this accelerated appeal, appellant D.P. appeals the probate court's judgment ordering temporary commitment for inpatient mental health services and its order for the administration of psychoactive medication.  In two issues, D.P. argues the evidence is legally and factually insufficient to support the judgment and the order.  We affirm.

---

[1] The Honorable Polly Jackson Spencer was the presiding judge of Probate Court No. 1 of Bexar County at the time the judgment of commitment and order for administration of medication were rendered.  However, Associate Judge Oscar Kazen presided over the hearing on the application for temporary commitment and the petition to compel psychoactive medication.  Judge Kazen signed the judgment and order that are the subject of this appeal.

BACKGROUND

A court issued a mental health warrant authorizing D.P.'s emergency detention. After a stay in protective custody, D.P. was transferred to the Nix Behavioral Health Center. At Nix, D.P was examined and evaluated by Dr. Cathleen Harrison. Shortly thereafter, Nix personnel filed an application for temporary commitment for mental illness, asking the probate court to involuntarily commit D.P. to a mental health facility. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.001 (West 2015). The application was supported by two certificates of medical examination: one of which was prepared by Dr. Harrison, who testified at the commitment hearing. Both doctors stated they had examined D.P., diagnosing her with delusion and paranoia, and specifically noting D.P. refused to take her medication or care for herself. Dr. Harrison also filed a petition seeking an order to compel psychoactive medication. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106.

The probate court held a commitment hearing at which Dr. Harrison testified D.P. was mentally ill and suffering from psychosis, an illness that impairs a person's thoughts, perception of reality, emotions, and judgment. Dr. Harrison explained D.P. was originally diagnosed with delusional disorder, but after examining her for a longer period, she believed D.P. suffered from psychosis. At the hearing, three of D.P.'s family members — her mother, sister-in-law, and sister — testified about D.P.'s problematic behavior. D.P. also testified at the hearing, disputing the diagnosis and alleging her family was lying and in "cahoots" against her.

At the conclusion of the testimony, the probate court granted the application for temporary commitment. In accordance with section 574.034 of the Texas Health and Safety Code ("the Code"), the court determined D.P. was mentally ill and as a result of her mental illness, was suffering severe and abnormal mental, emotional, or physical distress, was experiencing substantial mental and physical deteriorating of her ability to function independently, and was unable to make a rational and informed decision about whether or not to submit to treatment. *See*

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C) (West 2015). The probate court specifically noted D.P. lacked reality-based thinking and lost a significant amount of weight, substantiating the allegations that she was unable to provide for her basic needs or function independently.

After the probate court granted the application for temporary commitment, it proceeded with the medication hearing. At the hearing, Dr. Harrison testified in support of the petition for an order to compel psychoactive medications. Dr. Harrison stated D.P. did not have the capacity to make rational and informed decisions with regard to her prescribed medications, and the administration of the medications was in D.P.'s best interest. According to the doctor, if D.P. failed to take the medications, she would continue to suffer from paranoia. Dr. Harrison also opined D.P. would be capable of functioning normally in society as long as she took her medications as prescribed. The probate court ordered the administration of psychoactive medication. D.P. perfected this accelerated appeal, challenging the judgment and the order.

## ANALYSIS

In two issues on appeal, D.P. challenges the legal and factual sufficiency of the evidence to support the probate court's judgment for temporary commitment and order for administration of psychoactive medication. D.P. does not challenge the probate court's finding that she is mentally ill, nor does she contend the evidence is insufficient to support the court's findings that she is suffering from severe and abnormal distress and is unable to make rational and informed decisions about her treatment. Rather, D.P. specifically contends the evidence is insufficient to support a finding by clear and convincing evidence that she had a substantial mental or physical deterioration in her ability to function independently, and therefore all the requirements of subsection C of section 574.034 of the Code were not met. D.P. further contends that because the

evidence is legally and factually insufficient to support the probate court's judgment of commitment, it is also insufficient to support the medication order.

### *Burden of Proof and Standard of Review*

Clear and convincing evidence must support orders for temporary mental health services, such as temporary commitment and administration of psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. §§ 574.034 & 574.106(a-1). Clear and convincing evidence refers to "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010).

When determining whether the evidence is legally and factually sufficient to support findings made pursuant to a clear and convincing standard, we apply a heightened standard of review. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *Best Interest and Protection of N.D.*, No. 04-14-00720-CV, 2015 WL 1004310, at *1 (Tex. App.—San Antonio March 4, 2015, no pet. h.) (mem. op.). We also review all of the evidence to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *K.E.W.*, 315 S.W.3d at 20; *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *C.H.*, 89 S.W.3d at 25; *N.D.*, 2015 WL 1004310, at *1.

Under a legal sufficiency review, we review all of the evidence in the light most favorable to the findings and assume any disputed facts were resolved in favor of the findings so long as a reasonable factfinder could do so. *K.E.W.*, 315 S.W.3d at 20; *J.F.C.*, 96 S.W.3d at 266. We will also disregard any contrary evidence unless a factfinder reasonably could not have done so. *K.E.W.*, 315 S.W.3d at 20; *J.F.C.*, 96 S.W.3d at 266. Evidence is considered to be legally insufficient to support a trial court's finding if no reasonable factfinder could have formed a firm belief or conviction that the matter to be proven is true. *J.F.C.*, 96 S.W.3d at 266.

Under a factual sufficiency review, we review the disputed evidence to determine if it is such that a reasonable factfinder could not have credited in favor of the trial court's finding. *Id*. If, in light of the entire record, the disputed evidence is "so significant" that a factfinder could not reasonably have formed a firm belief or conviction in the truth of the trial court's finding, we must determine the evidence is factually insufficient. *Id.* In our review, we may not substitute the trial court's judgment with our own, and we must remain mindful that the factfinder is the sole judge of the witnesses' credibility and weight to be given to their testimony. *Id*.

### *Applicable Law — Judgment Ordering Commitment*

When a probate court receives an application for court-ordered temporary inpatient mental health services, it may order a patient to receive those type of services only if it finds by clear and convincing evidence that the proposed patient is mentally ill, and, due to that mental illness, the proposed patient is either: (A) likely to cause serious harm to herself; (B) likely to cause serious harm to others; or — as in this case — (C) is:

> (i) suffering severe and abnormal mental, emotional, or physical distress;
> (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
> (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a). Once the State proves the person is mentally ill, it need prove only one of the three listed statutory alternatives — (A), (B), or (C) above — to support a probate court's judgment ordering temporary mental health services. *State ex rel. L.G.*, No. 04-13-00556-CV, 2013 WL 6672796, at *4 (Tex. App.—San Antonio Dec. 18, 2013, no pet.) (mem. op.). However, the conjunctive list of three requirements within subsection (C) must be proved by clear and convincing evidence. *See M.S. v. State*, 137 S.W.3d 131, 136–37 (Tex. App.— Houston [1st Dist.] 2004, no pet.) (holding that evidence was legally insufficient to support

judgment ordering commitment because no finding of one of the three mandatory requirements listed in subsection (C)). The statute also requires the probate court to specify which of the alternatives — (A), (B), or (C) — supports its judgment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(b); s*ee Armstrong*, 190 S.W.3d at 250.

The statute further specifies the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior, confirming either "(1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d); *see also L.G.*, 2013 WL 6672796, at *3; *Armstrong*, 190 S.W.3d at 250. The expert's testimony cannot be conclusory and must be supported by the factual basis on which it is grounded. *Armstrong*, 190 S.W.3d at 251. Accordingly, an expert should detail the patient's specific behaviors upon which his or her opinion is based. *Id.* A probate court need not specify which one of these alternatives supports its judgment. *Armstrong*, 190 S.W.3d at 250–51.

Applicable Law — Order Authorizing Administration of Psychoactive Medication

A trial court may also order the administration of psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. § 574.106. This type of order may be rendered if: (1) the patient is under a court order for inpatient mental health services, and (2) the trial court finds by clear and convincing evidence that: (a) the patient does not have the capacity to make decisions regarding the administration of the proposed medication, and (b) treatment using the proposed medication is in the patient's best interest. *Id.* § 574.106(a), (a–1); *L.G.*, 2013 WL 6672796, at *3.

### *Application*

Here, as noted above, the trial court found D.P. was mentally ill and as a result of her mental illness, was suffering distress, was unable to function independently, and was unable to make rational decisions. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.034(a)(1),

574.034(a)(2)(C). However, D.P. challenges the trial court's finding that she was unable to function independently, contending the evidence was legally and factually insufficient to support such a finding. Accordingly, we limit our review to her specific challenge.

At the hearing, Dr. Harrison testified she examined D.P for about three weeks while D.P was at the mental health facility. Based on her evaluation of D.P. and a review of D.P.'s medical records, Dr. Harrison concluded D.P. was mentally ill, suffering from psychosis. Dr. Harrison stated D.P. was not forthcoming with regard to her symptoms and was in denial of her illness. D.P. exhibited episodes of paranoia and would make delusional and odd statements. For example, D.P. told Dr. Harrison that the mental health warrant was based on a false report and the judge hearing her commitment case needed to apply for a Visa in order to preside. D.P. also informed Dr. Harrison that she filed a report with the FBI about the health facility. Dr. Harrison noted that D.P. carried a stack of paperwork with her at all times, spending hours shuffling through it, highlighting specific sections.

Dr. Harrison also testified that although she believed D.P. was not likely to cause serious harm to herself, she believed D.P. was unable to take care of herself or provide herself with her basic needs, such as food and shelter. When asked why she believed D.P. could not take care of herself, Dr. Harrison indicated D.P was currently living with her mother and did not seem capable of working to support herself. She believed D.P could not take care of herself because of her "thought processes." Dr. Harrison added that D.P.'s "disconnect with reality" contributes to her inability to function independently. Dr. Harrison conceded that while in the facility, D.P. took care of her own hygiene and ate enough so that these issues were not a concern. However, she clarified these concessions, stating it was her belief that D.P. could not care for herself without help or outside a controlled environment.

D.P.'s sister-in-law, Michelle Torres, also testified at the commitment hearing. Ms. Torres testified she noticed D.P. became aggressive two years before the commitment hearing. According to Ms. Torres, D.P. would become very aggressive when you "messed" with her paperwork, her computer, or her dog. Ms. Torres testified D.P. would begin yelling and "come at" people. Ms. Torres explained she had to intervene on several occasions, and in one instance, D.P. broke her mother's cell phone and attempted to "physically get to her mother."

With regard to D.P.'s ability to provide for her basic needs, Ms. Torres testified D.P. stayed with her for a few days and during that time, D.P. did not drink any water or eat. According to Ms. Torres, D.P. only drank coffee. Ms. Torres further explained D.P. did not buy her own food or eat on her own, but had to be told to both eat and bathe on a regular basis.

In addition to Ms. Torres's testimony, D.P.'s sister, Donna Brooks, testified D.P. was paranoid and since 2012, went from "really chunky" to "very, very thin." Ms. Brooks stated it was her belief her sister lost a drastic amount of weight due to stress.

The probate court also heard testimony from D.P.'s mother, Rita Ledson. Ms. Ledson testified D.P. had lived with her for the past year after D.P. lost custody of her children and had nowhere else to go. According to Ms. Ledson, D.P. spends the majority of her time outside, either walking her dog or sitting outside with her dog. When asked whether D.P. eats on her own, Ms. Ledson stated D.P. drinks only coffee.

Ms. Ledson testified she once discovered D.P. standing outside her bedroom, holding a knife. Since then, Ms. Ledson has lived in fear of D.P., calling Ms. Torres almost hourly. Ms. Ledson described D.P. as "hyper," as opposed to physical, when someone interfered with her paperwork, computer, or dog.

When D.P. took the stand, she testified the mental health warrant issued against her was based on a false report by Ms. Torres, and as a result, she filed a complaint with the FBI given that

the FBI handles "all kinds of fraud" issues. When asked why Ms. Torres would file a false report, D.P. testified her brother stole her computer, and therefore, she called the police. She repeatedly insisted she was the one who called the police to report that her brother – not her mother – took her computer. When asked where she was living, D.P. testified she was currently living with her mother because her bills had "skyrocketed" after she was fired from her job for excessive absences. D.P. also denied being aggressive with her mother and indicated her family was in "cahoots with [her] being aggressive to [her] mother."

Based on our review of the evidence, we hold the evidence is legally and factually sufficient to support the probate court's judgment ordering commitment. Admittedly, an expert's diagnosis alone is not sufficient to sustain a temporary commitment, and an expert's opinion and recommendations must be supported by a showing of the factual basis on which it is grounded. *See N.D.*, 2015 WL 1004310, at *1; *Armstrong*, 190 S.W.3d at 250–51. However, there is no requirement that this factual basis be established by direct evidence. *N.D.*, 2015 WL 1004310, at *1. Here, in addition to Dr. Harrison's testimony regarding D.P.'s diagnosis and inability to care for her basic needs, the probate court heard evidence from family members regarding D.P.'s failure to eat or drink water — drinking only coffee — and dramatic weight loss. In fact, more than one family member testified as to D.P.'s inability to eat on her own without prompting. D.P.'s mother testified that in the past year, D.P. would not eat on her own and drank only coffee. This testimony coupled with Dr. Harrison's observations and opinion that D.P. could not take care of herself independently demonstrates D.P.'s inability to provide for her basic needs.

Accordingly, after considering the evidence under the applicable standards of review, we conclude the trial court could have reasonably formed a firm belief that D.P. was experiencing substantial mental or physical deterioration of her ability to function independently. *See K.E.W.*, 315 S.W.3d at 20; *J.F.C.*, 96 S.W.3d at 266. Accordingly, we hold the evidence is both legally

and factually sufficient to support the probate court's judgment ordering D.P. temporarily committed, and we affirm that judgment. *See K.E.W.*, 315 S.W.3d at 20; *J.F.C.*, 96 S.W.3d at 266.

With regard to the order authorizing the administration of psychoactive medication, we also hold the evidence is legally and factually sufficient to support the trial court's order. In this case, the only basis on which D.P. challenges the probate court's medication order is that the evidence is legally and factually insufficient to support the trial court's judgment of commitment. Accordingly, because we have determined the evidence is sufficient to support the probate court's judgment with regard to commitment, we affirm the medication order.

## CONCLUSION

Based on the foregoing, we overrule D.P.'s issues and affirm the probate court's judgment ordering D.P. committed, as well as the probate court's medication order.

Marialyn Barnard, Justice